UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LANDMARK LEGAL FOUNDATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 00-2338 (RCL) |
| ) | |
| ENVIRONMENTAL PROTECTION ) | |
| AGENCY, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

FILED

JUL 2 4 2003

CLERK, U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

MEMORANDUM OPINION

This case comes before the Court on defendant Environmental Protection Agency's motion for summary judgment and for a stay [66] and supplement [78], Landmark's response [77], and EPA's reply [82]. Also before the Court is Landmark's cross-motion for summary judgment [76], EPA's response [83], and Landmark's reply [86] and supplemental memorandum [93]. Upon consideration of the briefing, the law, and the record in this case, EPA's motion for summary judgment will be granted, and Landmark's cross-motion will be denied.

I. Background

This case originated when Plaintiff filed a FOIA request with defendant EPA on September 7, 2000, seeking "[i]dentification of all rules or regulations for which public notice has not been given, but which public notice is planned by the EPA between September 7, 2000 and January 20, 2001, including but not limited to the rules or regulations referenced in the attached news article" and various types of documents relating to those rules and regulations. The news article indicated

104

that EPA was attempting to push through certain regulations before the administration change. Dissatisfied with EPA's response, Plaintiff filed the instant suit on September 29, 2000. While the suit was pending and Landmark was awaiting EPA's response to its FOIA request, Landmark requested this Court to enter a preliminary injunction to ensure that all material potentially responsive to its FOIA request would be preserved during the administration change. The Court issued the injunction on January 19, 2001. As explained in detail in the Court's opinion and order on Landmark's motion for contempt issued this day, that injunction was not obeyed and potentially responsive material contained on hard drives and email backup tapes was destroyed. Upon discovering this massive noncompliance, EPA took action to rectify the situation by initiating an investigation by the Inspector General that included efforts to recover material from the reformatted hard drives–efforts that bore some fruit. The Court has held EPA in contempt and ordered it to pay Landmark's costs and fees caused by EPA's contumacious conduct. Having conducted a search of all records now in its possession, EPA has moved for summary judgment in this case.

II. EPA's Motion for Summary Judgment

A. Summary Judgment Standard

Reasonableness is the "guiding principle" for a court faced with a FOIA summary judgment motion. *Weisberg v. U.S. Department of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The D.C. Circuit succinctly therein described the summary judgment standard for FOIA cases: to be entitled to summary judgment, an agency must show that it "conducted a 'search 'reasonably calculated to uncover all relevant documents.'" *Id.* at 1485 (citation omitted). It is not the result of the search that is the court's focus, but its adequacy. *Id.* Adequacy "is judged by a standard of reasonableness and

depends, not surprisingly, on the facts of each case." *Id.* An agency may demonstrate the adequacy of its search by submitting "reasonably detailed, nonconclusory affidavits submitted in good faith." *Id.*

Landmark raises several arguments in opposing EPA's summary judgment that are simply irrelevant to this standard. First, it argues that EPA did not comply with the timelines provided in the FOIA for expedited processing, nor the timelines agreed upon by the parties for the completion of EPA's search. However, a lack of timeliness does not preclude summary judgment for an agency in a FOIA case. The only question for summary judgment is whether the agency finally conducted a reasonable search, and whether its withholdings are justified. When exactly a reasonable search was conducted is irrelevant. *See, e.g., Atkins v. Dep't of Justice*, 1991 WL 185084 (D.C. Cir. Sept. 18, 1991) (unpub.) ("The question whether DEA complied with the Freedom of Information Act's (FOIA) time limitations in responding to Aaron Atkins' request is moot because DEA has now responded to this motion."); *Tijerina v. Walters*, 821 F.2d 789, 799 (D.C. Cir. 1987) ("'[H]owever fitful or delayed the release of information under the FOIA may be . . . if we are convinced appellees have, however belatedly, released all nonexempt material, we have no further judicial function to perform under the FOIA.'" (quoting *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982)).

Landmark also argues that some documents were released to it after further searching was conducted, and that this indicates the first search was not reasonable. This is contrary to precedent, which teaches that continuing discovery and release of documents does not prove that the original search was inadequate, but rather shows good faith on the part of the agency that it continues to search for responsive documents. *Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986).

Landmark continues by arguing that EPA is in violation of the provision of the FOIA which

3

requires agency records to be maintained in such a manner as to be readily reproducible.[1] 5 U.S.C. § 552(a)(3)(B). EPA informed Landmark, in response to a subsequent FOIA request not part of this litigation, that former Administrator Carol Browner's email was not available in an electronic form, and that the paper copies were not maintained in a central location, but were filed according to relevance and could be located in any of the agency's files. Landmark Response [77] at exh. 1. Landmark takes this information to show a violation of the "readily reproducible" requirement. This is an incorrect reading of the statute. First, Landmark has not argued that the paper copies of Browner's emails are not "readily reproducible"; the Court sees no reason why they could not be easily duplicated on a copy machine. Second, Landmark seems to argue that this provision requires the agency to maintain a central electronic file containing Browner's email. Again, Landmark is mistaken. FOIA does not require an agency to reorganize its files in anticipation of or in response to a FOIA request. *Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1038 (7th Cir. 1998). Rather, the agency may keep its files in a manner best designed to suit its internal needs. *Id.* That there is no central electronic file containing Browner's emails does not violation the "readily reproducible" subsection of the FOIA.

    B. Adequacy of Search

        1. Scope of Search

Landmark's FOIA request seeks "[i]dentification of all rules or regulations for which public notice has not been given, but which public notice is planned by the EPA between September 7, 2000 and January 20, 2001, including but not limited to the rules or regulations referenced in the

---

[1]To the extent Landmark is referring to the document destruction, that issue is separately addressed.

attached news article" and various types of documents relating to those rules and regulations. EPA Motion for Summary Judgment [61] exh. 1. As an internal management tool, EPA had created a list of 88 actions subject to statutory, judicial, or other deadlines or subject to being acted upon in the near future. *Id.* exh. 5. By comparing the list of 88 with the April 2000 Regulatory Agenda, EPA's general method for giving public notice that it is developing regulations, EPA determined that 11 rules met the description in Landmark's FOIA request. *Id.* exh. 4 at ¶ 5. The terms of EPA's search were crafted with reference these 11 rules.

Landmark challenges the scope of EPA's search, disputing that its request was limited to the 11 rules identified by EPA. Landmark argues that it "conditionally consented" to EPA's list of 11 in exchange for EPA's agreement to complete its search within 30 days of a November 16, 2000 teleconference between the parties. Landmark Response [77] at 22. Landmark chastises EPA for "not mak[ing] any effort to identify additional pending regulations responsive to Landmark's request." *Id.* A FOIA request must "reasonably describe" the records requested. 5 U.S.C. § 552(a)(3)(A)(i). The agency's obligation to search is limited to the four corners of the request. *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 389 (D.C. Cir. 1996). Landmark argues that its "FOIA is obviously addressed to records associated with last minute regulations that EPA sought to establish or considered establishing under its authority to implement on an expedited 45-day period." Landmark Response [77] at 23. However, an agency processing a FOIA request is not required to divine a requester's intent. *See Kowalczyk*, 73 F.3d at 388 (rejecting plaintiff's argument that "staff should have realized" plaintiff wanted records from New York office even though FOIA request did not indicate this); *Hudgins v. IRS*, 620 F. Supp. 19, 21 (D.D.C. 1985 (Hogan, J.) ("[A]n agency is not required to have 'clairvoyant capabilities' to discover the requester's need."); *see also Thomas*

5

*v. Office of the U.S. Attorney for E.D.N.Y.*, 171 F.R.D. 53, 55 (E.D.N.Y. 1997) (FOIA requester cannot add to or enlarge underlying FOIA request during pendency of request or litigation).

Landmark's briefing seems to assume that EPA was required to compile a list of regulations meeting the parameters of its FOIA request, and to conduct its search from there. This is not the case. FOIA does not require an agency to create a document in response to a request. *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co*, 421 U.S. 132, 161-62 (1975); *Bureau of Nat'l Affairs v. Dep't of Justice*, 742 F.2d 1484, 1490 (D.C. Cir. 1984). Furthermore, an agency is not required to "answer questions disguised as a FOIA request." *Hudgins v. IRS*, 620 F. Supp. 19, 21 (D.D.C. 1985) (Hogan, J.). Finally, an agency need not conduct research in response to a FOIA request. *Allnutt v. Dep't of Justice*, 2000 WL 852455 at *12 (D. Md. Oct. 23, 2000). To the extent Landmark's request requires EPA to identify and list regulations meeting the description in its FOIA request, it seeks both research and the creation of a new document. Were the Court examining Landmark's FOIA request as a matter of first impression, it is not clear that Landmark's request would satisfy the standard set forth in the FOIA and EPA's implementing regulation. *See* 5 U.S.C. § 552(a)(3)(A) (requiring FOIA requester to reasonably describe records sought); 40 C.F.R. § 2.102 ("Your request should reasonably describe the records you are seeking in a way that will permit EPA employees to identify and locate them. Whenever possible, your request should include specific information about each record sought . . . ."). That EPA nevertheless identified 11 regulations and conducted a search based on that list is a testament to its good faith, rather than evidence that it conducted an improperly narrow search in bad faith. The Court will not deny EPA's motion for summary judgment on this ground.

    2. Adequacy

As noted, reasonableness is the hallmark of an adequate FOIA search, and must be decided on the facts of the case. *Weisberg v. U.S. Department of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The amount of time and staff devoted to a FOIA request are relevant to the reasonableness inquiry. *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986). Here, EPA conducted a thorough search, and in the case of many of its components, two searches. *See* EPA Motion for Summary Judgment [66]: Office of the Administrator, at exhs. 4, 9, 10, 11, 14, 15, 16, 41A; Administration and Resource Management, *id.* exh. 41G; Prevention, Pesticides and Toxic Substances, *id.* exh. 41C; Air and Radiation, *id.* exhs. 17, 18A-D, 41L; Water, *id.* exhs. 19, 41M; Solid Waste and Emergency Response, *id.* exh. 41D; General Counsel, *id.* exhs. 21, 22, 25, 26, 27, 28, 41J; Research and Development, *id.* exh. 41F; Enforcement and Compliance Assurance, *id.* exh. 41B; Chief Financial Officer, *id.* exh. 41I; Inspector General, *id.* exh. 41H; International Activities, *id.* exh. 41E; Environmental Information, *id.* exh. 41K; New England Region, *id.* exhs. 29, 42A; Region 2, *id.* exhs. 30, 42B; Region 3, *id.* exhs. 31, 42C; Region 4, *id.* exh. 32, 42D; Region 5, *id.* exhs. 33, 42E; Region 6, *id.* exhs. 34, 42F; Region 7, *id.* exhs. 35, 42G; Region 8, *id.* exhs. 36, 42H; Region 9, *id.* exhs. 37, 42I; and Region 10, *id.* exhs. 38, 42J. EPA also made available for deposition various officials who might have direct knowledge of what was contained in the destroyed documents. EPA's search of its substantive and regional components complies with exhortations that an "agency 'cannot limit its search' to only one or more places if there are additional sources 'that are likely to turn up the information requested.'" *Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (citations omitted). Here EPA's search was not confined to one office or region, it searched all components of the agency. *See* EPA Organization Structure, *available at* http://www.epa.gov/epahome/organization.htm.

Landmark contends that EPA's search of its electronic systems was inadequate because certain declarations do not state that electronic records were searched. Landmark is correct that EPA was required to search both its paper and electronic files. *See, e.g., Campbell v. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998) (stating that an agency cannot limit its search to one records system if another system is likely to yield responsive information). However, to the extent that the *Vaughn* declarations issued by the offices identified by Landmark as not specifically declaring that electronic records were searched were insufficient to show that electronic records were searched, these insufficiencies were rectified. On June 13, 2001, Ray Spears, Deputy Chief of Staff, sent a memo to the Associate Administrators, the Staff Office Directors, and the Executive Assistant to the Chief of Staff requiring an additional search of all files, specifically including electronic media. EPA Motion for Summary Judgment [66] at exh. 39 at ¶ 4. In response to this memo, further certifications were obtained from the Office of the Administrator, Office of Enforcement and Compliance, Office of Prevention, Pesticides, and Toxic Substances, Office of Solid Waste and Emergency Response, Office of International Activities, Office of Research and Development, Office of Administration and Resources Management, Office of Inspector General, Office of the Chief Financial Officer, Office of the General Counsel, Office of Environmental Information, Office of Air and Radiation, Office of Water, exh. 41, and the eleven regional offices, exh. 42. The offices identified by Landmark as not having been searched electronically, *see* Landmark Response [77] at 24-25, are all contained within the Office of the Administrator. *See* EPA Motion for Summary Judgment [66] at exh 16. A certification that all records for all offices within the Office of the Administrator, including electronic, were re-checked in response to the Spears memorandum was signed by Ray Spears. EPA Motion [66] at exh. 41A. A certification in response to the Spears

8

memorandum was also signed by each of the regional offices identified by Landmark as failing to explicitly state that electronic records were searched in the initial round, thus rectifying any deficiency in the original *Vaughn* declarations. EPA Motion [66] at exh. 42. The certifications from the regional offices in response to the Spears memorandum also dispose of Landmark's complaint that the original *Vaughn* declarations fail "to set forth the search terms and the type of search performed." Landmark Response [77] at 25. The Spears memorandum attached the list of 11 regulations and directed that the search be conducted with reference to that list. The certifications from the regions indicate compliance with the criteria set forth in the Spears memorandum. EPA Motion [66] at exh. 42.

The Court has reviewed the above-listed declarations from the divisions and regional offices above and finds that the affidavits describe adequate searches of all files likely to contain responsive materials. *Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) ("[T]he court may rely on '[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive material (if such records exist) were searched.'" (citations omitted)); *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) ("In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith."). The affidavits identify the affiants and their roles in the agency, discuss how the FOIA request was disseminated within their office and the scope of the search, which particular files were searched, and the chronology of the search. In *Steinberg v. Dep't of Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994), the court explained that "agency affidavits that 'do not denote which files were searched, or by whom, do no reflect any systematic approach to document location, and not provide information specific enough to enable

[the requester] to challenge the procedures utilized' are insufficient to support summary judgment." (quoting *Weisberg v. Dep't of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980)). The affidavits here do not suffer these inadequacies. On the issue of segregability, the Court has reviewed both the declarations and the *Vaughn* indices, and finds credible the agency's assertions that withheld material is not reasonably segregable. *See Trans-Pacific Policing Agreement v. United States Customs Service*, 177 F.3d 1022, (D.C. Cir. 1999) (imposing duty on district court to review record for segregability).

### 3. Destroyed Documents

Landmark directs most of its energy in the summary judgment briefing to arguing that EPA's destruction of potentially responsive documents precludes summary judgment in its favor. This is not the case. It is well settled that a FOIA request pertains only to documents in the possession of the agency at the time of the FOIA request. *Green v. Nat'l Archives & Records Admin.*, 992 F. Supp. 811, 818 (E.D. Va. 1998) ("FOIA only obligates agencies to provide access to those documents in its possession."). That an agency once possessed responsive documents but does not at the time of the FOIA request does not preclude summary judgment in the agency's favor. *See, e.g., Nolen v. Rumsfeld*, 535 F.2d 890, 891 (5th Cir. 1976) ("[P]roduction of missing records . . . is not within the purview of the Freedom of Information Act."); *see also Bartlett v. Dep't of Justice*, 867 F. Supp. 314, 316 (E.D. Pa. 1994) ("Bartlett's request seeks presently nonexistent material, therefore, the request does not seek a record within the meaning of FOIA."). FOIA does not impose a document retention requirement on agencies. *Green*, 992 F. Supp. at 818. Even where an agency was obligated to retain a document and failed to do so, "that failure would create neither responsibility under FOIA to reconstruct those documents nor liability for the lapse." *Folstad v. Bd. of Governors*

*of the Fed. Reserve Sys.*, 1999 US Dist LEXIS 17852 at *4 (W.D. Mich. Nov. 16, 1999).

While this precedent is not exactly on point, as EPA possessed the intact hard drives and the email backup tapes[2] at the time of the FOIA request, it is instructive. Because EPA does not currently possess these documents, the Court does not find that it is wrongfully withholding them so as to preclude summary judgment. This is not to say that the Court has taken lightly EPA's document destruction. The Court holds EPA in contempt in a separate opinion issued this day, and has ordered it to pay Landmark's fees and costs caused by its contumacious behavior. EPA has remedied Landmark's injury to the best of its abilities by providing access to top EPA officials–including former administrator Carol Browner–for deposition, by initiating an investigation by the Inspector General, and by recovering information from the reformatted hard drives to the extent possible.

The situation facing the Court is much like that in *Jefferson v. Reno*, Civ. Action No. 96-1284 (GK). In *Jefferson*, a federal prisoner filed a FOIA request for the United States Attorney's file on his criminal case. The file was first withheld under FOIA exemption 7(A), the law enforcement exemption, because the case was on direct appeal. *Jefferson v. Reno*, 123 F. Supp. 2d. 1, 2 (D.D.C. 2000) (Kessler, J.). After Jefferson lost the appeal of his conviction to the Circuit but before his petition for certiorari to the Supreme Court was denied, the Assistant U.S. Attorney on the case destroyed the file. *Id.* at 3. The court ordered the defendant to pay plaintiff's legal fees and costs

---

[2]It is not exactly the case that EPA possessed the email backup tapes at the time of Landmark's FOIA request. The tapes at issue were both created and destroyed during the pendency of the FOIA request and this litigation. However, Landmark argues (and its speculation cannot be rebutted because the contents of the tapes are unknown) that the email backed up onto the tapes–email that was created *after* the FOIA request and therefore outside its temporal scope–could have contained responsive forwarded material or attachments that were created within the temporal frame of the FOIA request.

11

and to obtain documents from the U.S. District Court in Florida and the St. Petersburg, Florida police department for plaintiff. *Id.* at 4. The relief ordered essentially what was ordered in this case, the payment of attorney's fees occasioned by the document destruction; EPA in this case undertook to reconstruct the documents without a court order. When defendant completed its good faith effort to reconstruct plaintiff's file, the court dismissed plaintiff's case. *Jefferson v. Reno*, Civ. Action No. 96-1284 (GK), Mem. Op. [120] & Order [121] of Aug. 27, 2001. Likewise, In *Grace v. Dep't of Navy*, 2001 WL 940908 (N.D. Cal. Aug. 13, 2001), files that were the subject of a FOIA request had been lost. The court granted summary judgment for the agencies where the agencies "discharged their burden of making a good faith attempt to locate the missing files" and attempting to recreate the information contained in the lost files. *Grace*, 2001 WL 940908 at *5. Reconstruction of the destroyed documents to the extent possible is an appropriate remedy for bad faith document destruction. *See Cal-Almond, Inc. v. Dep't of Agriculture*, 960 F.2d 105, 109 (9th Cir. 1992) ("Absent a showing that the government has improperly destroyed 'agency records,' FOIA does not require these records to be recreated." *citing Nolen v. Rumsfeld*, 535 F.2d 890, 891 (5th Cir. 1976)). Here, as in *Jefferson*, "Defendant . . . has made its best efforts to reconstruct and disclose all non-exempt records . . . . The Defendant is obligated to do no more." *Jefferson v. Reno*, Civ. Action No. 96-1284 (GK), Mem. Op. of Aug. 27, 2001 [120] at 13.

### C. Propriety of Withholdings

EPA withheld documents under FOIA exemptions 5 (documents that would be privileged in discovery) and 6 (personal privacy). Landmark did not challenge any of these withholdings or the adequacy of the declarations supporting these withholdings. Because Landmark has failed to contest them, the Court will treat these withholdings as conceded. *Fitzgibbon v. U.S. Secret Service*, 747

F. Supp. 51, 59 (D.D.C. 1990) (Greene, J.) ("Since plaintiff does not challenge the withholding of the other documents, the Court will treat these matters as conceded."). In *Tran v. Dep't of Justice*, 2001 WL 1692570 at *1 n.1 (D.D.C. Nov. 20, 2001) (Huvelle, J.), the plaintiff did not contest the agencies' withholdings. However, because the plaintiff was proceeding pro se, court elected not to treat the withholdings as conceded. Landmark, however, is represented by able, vigilant counsel, and the considerations that prompted the *Tran* court to look to the merits despite a lack of opposition do not apply here.

### III. Landmark's Motion for Summary Judgment

Landmark has moved for summary judgment in its favor in this case. However, none of the grounds identified by Landmark are appropriate for granting summary judgment in favor of a FOIA requester. First, Landmark argues the EPA's failure to meet deadlines in the Freedom of Information Act, to timely act on Landmark's request for expedited consideration, and to comply with agreed timelines mandates summary judgment in its favor. As discussed above, a lack of timeliness or compliance with FOIA deadlines does not preclude summary judgment for an agency, nor mandate summary judgment for the requester. *See, e.g., Atkins v. Dep't of Justice*, 1991 WL 185084 (D.C. Cir. Sept. 18, 1991) (unpub.) ("The question whether DEA complied with the Freedom of Information Act's (FOIA) time limitations in responding to Aaron Atkins' request is moot because DEA has now responded to this motion."); *Tijerina v. Walters*, 821 F.2d 789, 799 (D.C. Cir. 1987) ("'[H]owever fitful or delayed the release of information under the FOIA may be . . . if we are convinced appellees have, however belatedly, released all nonexempt material, we have no further judicial function to perform under the FOIA.'" (quoting *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir.

13

1982)).

Second, Landmark asserts that EPA's failure to take steps to ensure that records were preserved during the transition between administrations entitles it to summary judgment. However, FOIA does not mandate record retention. *Green v. Nat'l Archives & Records Admin.*, 992 F. Supp. 811, 818 (E.D. Va. 1998). The remedy for this failure is not summary judgment under FOIA, but the remedy already provided to Landmark–costs and fees associated with the document destruction, and EPA's efforts to recover the documents and recreate the files through deposition.

On a related note, Landmark argues that EPA has not conducted an adequate search for responsive records because no search was made of the hard drives before they were reformatted or the email backup tapes before they were erased.[3] The Court has already addressed this contention, and determined that because EPA does not possess these records, summary judgment cannot be denied on the grounds that they were not searched. This does not mean that Landmark is left without a remedy for this untenable document destruction; EPA has attempted to reconstruct the hard drives, and has made available for deposition various EPA officials whose potentially responsive

---

[3] Even if the Court had not reached the conclusion that the document destruction does not preclude a grant of summary judgment for EPA, it is could not be grounds for a summary judgment in Landmark's favor. If a court finds that a search was inadequate, the agency is ordered to continue searching. *See Valencia-Lucena v. United States Coast Guard*, 180 F.3d 321 (D.C. Cir. 1999) (remanding to district court for "further proceedings" where agency had not contacted individual who might have relevant information). It would be inappropriate at that stage to end a case with summary judgment, regardless in whose favor it was decided. While FOIA summary judgment differs in some respects from a run-of-the-mill summary judgment, the basic framework of "no genuine issue as to any material fact" remains. *See* Fed R. Civ. P. 56(c). An inadequate search creates a genuine issue of material fact. *Valencia-Lucena*, 180 F.3d at 328; *Gabel v. IRS*, 1998 WL 817758 at *5 (N.D. Cal. June 25, 1998) ("[I]f the defendant's affidavit is adequate . . . the burden shift[s] to the plaintiff to create a *triable issue of fact* that the search was inadequate." (emphasis added)).

information was destroyed. Furthermore, this Court has ordered EPA to pay Landmark's legal fees and costs caused by EPA's contumacious behavior. Regrettably, EPA and this Court can do no more to make Landmark whole. *Jefferson v. Reno*, Civ. Action No. 96-1284 (GK), Mem. Op. of Aug. 27, 2001 [120] at 13.

Landmark's final ground for seeking summary judgment is the Inspector General's determination that former General Counsel Gary Guzy improperly withheld responsive records. While this situation is troubling,[4] the issue is now moot because the records have been released to Landmark. A FOIA action is designed to remedy the improper withholding of documents and to compel their disclosure; it does not provide an after-the-fact remedy once documents have been released, however tardily. *Tijerina v. Walters*, 821 F.2d 789, 799 (D.C. Cir. 1987). That information is still being discovered and released does not mean that EPA's search was inadequate or conducted in bad faith, as Landmark suggests. Rather, it shows EPA's good faith in continuing to search for records responsive to Landmark's request. *Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986).

IV. Conclusion

---

[4]FOIA provides for referral of agency personnel to the Special Counsel for investigation where "circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously with respect to the withholding." 5 U.S.C. § 552(a)(4)(F). While Guzy's behavior unquestionably raises questions about his actions, the other requirements of this section are not met in this case. To refer an employee to the Special Counsel, the court must order the production of improperly withheld documents and award attorney's fees and litigation costs, in addition to issuing a written finding of suspected arbitrary or capricious conduct. *Id.* Here, the agency released the documents without a court order, so the Court may not employ FOIA's referral provision. *Id*; *Gabel v. IRS*, 1998 WL 817758 at *6 (N.D. Cal. June 25, 1998).

The Court will grant EPA's motion for summary judgment[5] [66], and deny as moot its motion for a stay. EPA's search in response to Landmark's FOIA request was adequate and reasonable. The Court and the EPA have provided the best remedy possible–though it is still imperfect–for EPA's document destruction, and summary judgment for EPA is not precluded. The Court will deny Landmark's motion for summary judgment, as it does not provide any grounds on which summary judgment is appropriate.

A separate order shall issue this day.

Royce C. Lamberth
United States District Judge

DATE: 7-24-03

---

[5]EPA's motion for summary judgment [66] is styled a "Partial Motion for Summary Judgment." EPA's motion was partial because EPA, before claiming Exemption 4 for some material, was contacting companies whose information might be subject to Exemption 4 to determine whether the companies wished to invoke that exemption. EPA informed the Court in a supplementary filing that Landmark indicated it had no continuing interest in the information that was the subject of the Exemption 4 claim. Because the only portion of the case in which EPA was not seeking summary judgment at the time it filed its motion was that portion relating to Exemption 4, when the Exemption 4 issue dropped out of the case the motion became one for summary judgment on the entire case.